UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YCS INVESTMENTS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, et al.,<br><br>    Defendants. | Case No. 19-cv-01899-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

Now before the Court is the motion to dismiss filed by Defendant United States Fish and Wildlife Service ("the Service") for lack of jurisdiction. The Service moves to dismiss the complaint filed by Plaintiff YCS Investments ("YCS") based upon alleged violations of the Endangered Species Act ("ESA") and the Administrative Procedures Act ("APA"). The Service contends that YCS cannot establish the constitutional minimum for Article III standing.

**BACKGROUND**

According to the complaint in this matter, the Service adopted a habitat conservation plan under section 10 of the ESA that requires acquisition and management of hundreds of acres of land within the Young Ranch property, owned by YCS. (*See* Complaint ¶ 1.) YCS contends that its preservation efforts and active management of the habitat at Young Ranch "is economically feasible only if YCS has the opportunity to develop the 10 percent of the property that lacks such habitat." (*Id.*) The County of Santa Clara ("County"), however, has "made it clear that it will not

allow even this limited development necessary to facilitate the plan's conservation goals." (*Id.*) On this basis, YCS contends that the Service "must reinitiate consultation under ESA section 7 to reconsider its approval of the [County's] plan in light of the information showing that the plan's conservation strategy cannot be fully implemented." (*Id.*)

In essence, YCS, a property management and development company, contends that it has been injured by the County's refusal to allow them to develop 10 percent of their land based on the County's plan implementing the Service's preservation goals. YCS contends that the Service's conduct and the County's subsequent plan fail to protect the identified endangered species on the property, the Bay Checkerspot butterfly. Although YCS has sued the County multiple times in state court, the property development company sues the Service directly in this federal action. The Service moves to dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that the Court lacks subject matter jurisdiction over YCS because the plaintiff lacks standing to invoke the Court's authority.

The Court will address additional facts as necessary in its analysis.

## ANALYSIS

**A.    Applicable Legal Standards.**

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Article III of the Constitution requires that a plaintiff have standing to assert claims in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Challenges to Article III standing implicate a court's subject matter jurisdiction and therefore are properly raised under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Federal courts are courts of limited jurisdiction," and "[i]t is to be presumed that a cause lies outside this limited jurisdiction" unless otherwise shown. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

To establish standing, a plaintiff has the burden to demonstrate (i) that he suffered an injury-in-fact (ii) which resulted from the defendant's conduct and (iii) that a favorable ruling would redress the injury. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted). Where a defendant challenges plaintiff's standing based on the allegations in the

complaint, the challenge is known as a facial challenge. *Id.* In a factual attack on subject matter jurisdiction, the party challenging standing disputes the truth of allegations that otherwise would invoke federal jurisdiction. *Id.* Once the moving party "converts" a motion to dismiss for lack of standing into a factual challenge by submitting evidence to the court, the party opposing the motion must furnish evidence necessary to "satisfy its burden of establishing subject matter jurisdiction." *Id.* (quotations omitted).

**B.     Analysis.**

This matter must be dismissed under Federal Rule of Civil Procedure 12(b)(1) because YCS is unable to demonstrate that it suffered an injury-in-fact which resulted from the Service's conduct and that a favorable ruling would redress the injury. *See id.* The complaint in this matter is clear regarding the factual predicate for the suit. The County is the proper party who allegedly caused YCS to suffer the consequence of not being able to develop a portion of its property for residences. The County was the party which disapproved of YCS's proposed land development project because it was inconsistent with the County's plan. The cause of YCS's grievance is therefore the conduct of the County in failing to approve the development of the land intended to be used by YCS for residences. (*See, e.g.,* Complaint ¶ 65 ("Long-term conservation and management of Young Ranch is not possible without the County's approval of limited development on a small portion of the property.").)

The only injury claimed by YCS in this matter which is potentially affected by the Service's, as opposed to the County's, conduct was YCS's alleged interest in the butterfly's habitat. In the complaint, YCS alleges that it has undertaken "extensive, multi-year biological surveys, monitoring studies of the [butterfly] population, and . . . habitat on Young Ranch, and of other valuable resources found on the property, and has shared the results of those studies with the Service and other agencies to inform the development of the [County] Plan." (*Id.* at ¶ 21.) YCS further alleges that the Service's "arbitrary and capricious approval of the . . . Plan, and the Service's failure to reinitiate consultation on the Plan, adversely affect YCS's interest in the conservation of the [butterfly], its habitat, and other sensitive resources affected by the Plan." (*Id.*) In re-framing its alleged injury to be its interest in the butterfly's conservation and habitat,

3

YCS attempts to plead a cognizable injury resulting from the Service's conduct. However, the Court finds that this ostensible injury is not fairly traceable to the challenged conduct by the Service, but rather is the direct result of a third party's independent action. To the extent that YCS can legitimately claim injury to its conservation interests in the scientific research, education, and management of the butterfly's habitat, it cannot demonstrate that the Service's conduct had a negative impact on these interests. The Court finds that YCS has failed to establish an injury that it has suffered on behalf of the listed butterfly. The relevant showing for the purposes of injury sufficient to plead Article III standing "is not injury to the environment but injury to the plaintiff." *Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. 167, 181 (2000). Even if YCS could demonstrate that the Service's conduct was detrimental to the butterfly species, such a showing would not be sufficient to establish standing for YCS. YCS has not alleged that its conservation efforts have been injured in a concrete and particularized way. The only cognizable injury alleged in the complaint is harm to YCS's corporate objective to be a profitable land development company.[1]

Not only is YCS unable to plead an injury-in-fact, but it is similarly unable to demonstrate that any claimed injury was caused by the Service's conduct. Even if the development company could allege facts sufficient to demonstrate that conservation of the butterfly and its habitat is germane to its corporate objective, the County's denial of permission to build on 10 percent of its land does not logically lead to the conclusion that the Service caused injury to the conservation interests of YCS. YCS contends that the company cannot remain profitable without development of a portion of its protected lands. However, there is no conduct by the Service which harms the butterfly habitat or conservation. There is merely an argument that the for-profit property management company cannot maintain its profits without property development in contravention

---

[1] To the extent YCS attempts to argue that its injury is not its financial interest in developing the property, but rather that its injury should be based on organizational standing, there is no persuasive evidence or allegation that the Service's conduct directly conflicts with YCS's corporate mission. Rather, as demonstrated in its Articles of Incorporation, YCS's interest is the for-profit development of the real estate investment it has made. YCS has not, and the Court is persuaded, cannot submit evidence that its purposed interest in protecting the endangered butterfly is germane to its organizational purpose (or that this purpose was frustrated by the Service's conduct).

4

of the County's plan to preserve the open lands for the native species' habitat. There are no allegations and YCS makes no argument that the Service's conduct caused specific injury to the company's conservation interests. *See Lujan,* 504 U.S. at 560 n.1 ("By 'particularized' we mean that the injury must affect the plaintiff in a personal and individual way"). The Service's conduct in approving the County's Plan and its failure to reinitiate consultation does not have any discernable impact on YCS's specified interests in the preservation of the butterfly and its habitat. YCS is unable to allege sufficient facts to establish that it was the conduct of the Service that had an adverse effect on the conservation priorities of the property development company. In fact, the conservation efforts made by YCS that it alleges in the complaint occurred after the conduct of the Service in approving the plan and subsequently not reinitiating its review.

Lastly, YCS is unable to demonstrate how a favorable ruling by this Court would redress its alleged injury. "There is no redressability, and thus no standing, where . . . any prospective benefits depend on an independent actor who retains 'broad and legitimate discretion the courts cannot presume ether to control or to predict.'" *Glanton v. AdvancePSC Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (quoting *ASARCO Inc. v. Kadish*, 480 U.S. 605, 615 (1989)). Here, even if the Court were to find there was a cognizable injury that was fairly traceable to the Service's conduct, the County functions as an independent actor which retains discretion to regulate the planned uses of land in its jurisdiction. Regardless whether the Court compelled the Service to reinitiate consultation, the County would still be legally obligated to disapprove of the YCS's proposed residential program under the County's current Plan. (*See* Complaint ¶ 70 ("Under California and local law, the County may not lawfully approve a development plan that conflicts with its General Plan.").) Even with a favorable outcome in this litigation, the County would still function as an independent actor with broad discretion to reject the development plans presented by YCS. If it is entitled to any remedy, YCS must seek such redress in its state law suit against the County, which is currently pending before the Santa Clara Superior Court (*YCS Investments, Inc. v. The County of Santa Clara*, Case No. 17CV311946).

///

///

**CONCLUSION**

For the foregoing reasons, the Service's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is GRANTED. The Court shall issue a separate judgment and the Clerk is instructed to close the matter.

**IT IS SO ORDERED.**

Dated: January 24, 2020

_____
JEFFREY S. WHITE
United States District Judge